Jessie M. PETERS, Appellant,

v.

GIFFORD–HILL & COMPANY, INC., Appellee.

No. 05–89–00927–CV.

Court of Appeals of Texas, Dallas.

July 13, 1990.

Rehearing Denied Sept. 14, 1990.

Stephen C. Porter, Dallas, for appellant.

Kathleen W. Billingsley, Daniel A. Foster, E. Scott Frost, Fort Worth, for appellee.

Before ENOCH, C.J., and CHADICK[1] and BISSETT[2], JJ.

## OPINION

BISSETT, Justice (Retired).

This is an appeal by defendant Jessie M. Peters, the guarantor of an account, from a judgment which enforced the guaranty agreement. We affirm the trial court's judgment.

Gifford–Hill & Company, Inc. (Gifford–Hill) filed suit against Texas Best Redi–Mix, a Texas general partnership, Donovan L. Enox, Jim Doerr, and Tony Peters individually, and as partners in Texas Best Redi–Mix, the Texas Corporation named Texas Best Redi–Mix Inc., the corporate successor to Texas Best Redi–Mix, a partnership, on an open account, and Jessie M. Peters, the guarantor of the account. The remaining defendants have not appealed.

Prior to November of 1982, Jessie M. Peters had done substantial business with Gifford–Hill through a corporation named Peters & Son, Inc. (Peters & Son), in which he was an officer, director, and one of three shareholders. Peters & Son had established a credit account with Gifford–Hill, but Jessie M. Peters had never personally guaranteed the Peters & Son account with Gifford–Hill.

A general partnership, named Texas Best Redi–Mix, was formed in October of 1982. The partners were Donovan L. Enox, Jim Doerr, and Tony Peters (the son of Jessie M. Peters). The partnership opened an account with Gifford–Hill on November 29, 1982, and on the same day, Jessie M. Peters executed a guaranty agreement with Gifford–Hill, whereby he guaranteed the payment of the goods sold by Gifford–Hill to the Texas Best Redi–Mix partnership. The guaranty was executed by the guarantor in his individual capacity by signing his name, "Jessie M. Peters," on a blank line over the printed word "Guarantor."

The guaranty agreement (the guaranty), among other provisions, provided:

Should the status of the Debtor change, this guaranty shall continue and also cover the indebtedness of the Debtor under the new status, according to the terms hereof guaranteeing the indebtedness of the original Debtor.

The guaranty further provided that it could be terminated prospectively if the guarantor gave Gifford–Hill written notice of such termination. Jessie M. Peters never gave notice to Gifford–Hill that he did not intend to be liable on the guaranty. There were no other written agreements or additional written terms to the guaranty that would modify or revise the guaranty's express terms.

The partnership, Texas Best Redi–Mix (Texas Best), ceased doing business on or about June 8, 1983, but its corporate successor, Texas Best Redi–Mix, Inc. with defendants Donovan L. Enox, Jim Doerr, and Tony Peters as its shareholders, directors, and officers, continued doing business with Gifford–Hill. Between November 29, 1982, and June 8, 1983, Texas Best purchased materials (sand and rock) from Gifford–Hill and sold and delivered them to Peters & Son; from June 8, 1983, until October of 1983, Texas Best Redi–Mix, Inc., purchased such materials from Gifford–Hill and sold and delivered them to Peters & Son. In October of 1983, Texas Best Redi–Mix, Inc. opened its own mixing plant, and while it continued to purchase materials from Gifford–Hill, it ceased selling or delivering them to Peters & Son. No common ownership or management existed between Texas Best, the partnership, or Texas Best Redi–Mix, Inc. and Peters & Son.

In October of 1983, when Texas Best Redi–Mix, Inc. opened its new plant and

---

1. The Honorable T.C. Chadick, Justice, retired, Supreme Court of Texas, sitting by assignment.

2. The Honorable Gerald T. Bissett, retired, Court of Appeals, Thirteenth District of Texas at Corpus Christi, sitting by assignment.

ceased selling and delivering the materials it had purchased from Gifford–Hill to Peters & Son, the balance owed by it to Gifford–Hill was less than $2,000 and was subsequently paid. By April of 1985, Texas Best Redi–Mix, Inc. owed Gifford–Hill a balance in excess of $400,000. Gifford–Hill continued to sell materials to Texas Best Redi–Mix, Inc., until March 31, 1987, when the account was closed. The outstanding balance of the account on the day of closing was $394,299.76. Texas Best Redi–Mix, Inc. failed to pay the outstanding balance and Gifford–Hill then made demand on Jessie M. Peters for payment thereof under the guaranty. Jessie M. Peters failed to do so and this lawsuit was filed by Gifford–Hill.

Gifford–Hill alleged, insofar as its suit against Jessie M. Peters on the guaranty was concerned, that:

1. By the terms of the guaranty agreement, Jessie M. Peters has bound himself to pay to plaintiff any and all of the indebtedness owed by Texas Best, whether or not there was a change of status to Texas Best Redi–Mix, Inc.;

2. Prior to the time the debt was incurred, Jessie M. Peters never gave plaintiff notice, written or oral, that he would not be liable for the debt;

3. The attempt by Jessie M. Peters to vary the terms of the written guaranty agreement by asserting additional terms or conditions or to limit the guaranty agreement only to those sums charged for materials actually delivered to the plant of Peters & Son is barred by the parol evidence rule;

4. The claims of Jessie M. Peters are barred by the Statute of Frauds and the Doctrine of Merger; and

5. It denied that it made any misrepresentations to Jessie M. Peters regarding the terms or conditions of its liability under the guaranty agreement.

The petition was sworn to by L.T. Baker, the Divisional Credit Manager for Gifford–Hill.

Jessie M. Peters, in his first amended answer, alleged that the guaranty agreement is unenforceable due "to fraud in that plaintiff knowingly and fraudulently represented the nature and terms of said guaranty agreement at the time it was executed by defendant," and that he relied on such misrepresentation "and would not have entered into the guaranty agreement except for the misrepresentations." In addition, it was alleged:

For further answer, if such be necessary, defendant J. Peters alleged that he and the plaintiff reached an oral agreement which was understood by both; however, the guaranty agreement ... does not embody the essential and material elements of that oral agreement and was signed as a result of a mutual mistake by both J. Peters and the plaintiff.

Attached to the first amended answer is the affidavit of Jessie M. Peters, which reads:

Before me, the undersigned authority, on this day personally appeared Jessie M. Peters, who, being first duly sworn, on oath stated that he has read the foregoing First Amended Answer and that the statements contained therein are within his personal knowledge and are true and correct; and he denies the alleged account set out in Plaintiff's Original Petition.

Trial was to a jury. At the conclusion of the evidence, the trial court granted Gifford–Hill's motion for a directed verdict against the defendant corporation Texas Best Redi–Mix, Inc., and submitted the remainder of the case to the jury on four questions. We are concerned here only with the jury's answers to question numbers two, three, and four.

The jury, in answer to question number two, found "that as a result of the sale to a third party, all or substantially all of the assets of Texas Best Redi–Mix, Inc. were disposed of to the advantage of or for the benefit of defendants Donovan Enox, Jim Doerr and Tony Peters, and that as a result the corporation was rendered incapable of paying its debts." The jury, in answer to question number three, found "that it was the intent of both Jessie M. Peters and Gifford–Hill, Inc. that Peters & Son Redi–Mix, Inc., and not Jessie M. Peters be

bound by the terms of the guaranty agreement dated November 29, 1982." Question number four asked: "Do you find from a preponderance of the evidence that it was the intent of both Jessie M. Peters and Gifford–Hill & Company, Inc. that the guaranty agreement did not include the debt incurred by Texas Best Redi–Mix, Inc. to Gifford–Hill & Company, Inc.?" The jury answered "No."

The trial court, in its judgment, found or concluded:

1. There was no evidence to support the defendants' affirmative defense of mutual mistake as to the identity of the guarantor; that the guaranty agreement was not ambiguous; that there "was no fraud, trick, artifice, or device in the execution of the guaranty agreement;" that the evidence tendered by the defendant Jessie M. Peters or admitted at the trial to vary the terms of the guaranty agreement regarding the identity of the guarantor is in violation of the Parol Evidence Rule and the Statute of Frauds, and "constituted no evidence of probative force to sustain the jury's answer to Question No. 3."

2. That the jury's answer to Question No. 4 was in favor of Gifford–Hill and against the defendant Jessie M. Peters on the latter's affirmative defense of "mutual mistake as to the status of the principal obligee on the account the subject of plaintiff's complaint and the written guaranty agreement," and that judgment should be rendered upon the verdict in favor of Gifford–Hill against the defendant Jessie M. Peters on its claim under the written guaranty agreement.

Accordingly, the trial court granted Gifford–Hill's motion to disregard the jury's answer to question number three, and denied the defendant's motion to disregard the jury's answer to question number four. The trial court's judgment, with respect to Jessie M. Peters, decreed:

1. That Gifford–Hill recover the principal sum of $394,299.66 from the defendant Jessie M. Peters on its claim under the guaranty agreement;

2. That Gifford–Hill recover against the defendant Texas Best Redi–Mix, Inc., and Jessie M. Peters, jointly and severally, prejudgment interest in the amount of $53,735.14, accrued on the principal of $394,299.76 to date of judgment;

3. That Gifford–Hill recover attorney's fees from the defendants Texas Best Redi–Mix, Inc., Jessie M. Peters, and Donovan L. Enox, Jim Doerr and Tony Peters, jointly and severally, the stipulated attorney's fees in the amount of $15,000.00 through the trial of their case, an additional sum of $3,000.00 in the event of an appeal to the Court of Civil Appeals, and an additional sum of $3,000.00 in the event of an appeal to the Supreme Court of Texas;

4. That post-judgment interest on the amounts of money awarded to Gifford–Hill shall accrue at the rate of 10% per annum from the date of judgment (April 18, 1989) until paid.

Jessie M. Peters presents four points of error. We first consider his fourth point of error, wherein he claims that the trial court erred in finding that the guaranty was unambiguous. He argues that "if it was Gifford–Hill's intention to provide that if the partnership (Texas Best) 'debtor' later incorporated, with the partners exchanging their partnership interest for corporate stock (in Texas Best Redi–Mix, Inc.) that the guarantor (Jessie M. Peters) would still be liable for the debt of the subsequently chartered corporation, the guaranty should have unambiguously expressed that intent." He further argues: "there is certainly no definition given in the guaranty as to what is meant by the term 'status,' ... and that a change of 'status' could mean many things...." He contends that the agreement must be construed against Gifford–Hill, since it provided the form of the guaranty. He also says that there was no evidence that anyone intended "that the guaranty entered to covered [sic] the indebtedness of an entity that did not exist at the time the guaranty was signed," and, moreover, the "change of status" provision in the guaranty is "ambiguous, vague and indefinite."

■ The "change of status" provision, previously set out verbatim herein, is found in paragraph two of the guaranty. In addition thereto, paragraph six of the guaranty, in relevant part, provides:

> In the event the Debtor is a ... partnership or is hereafter incorporated ... such fact shall in no manner affect my, our or either of our liability hereunder, but I, we, or either of us shall be liable hereunder, notwithstanding said ... partnership is not liable for such indebtedness....

In the case at bar, the partners in Texas Best exchanged their interest in the partnership for an identical interest in the corporation, Texas Best Redi–Mix, Inc., the successor to the Texas Best partnership. The guaranty itself provides in paragraph two that if the status of the debtor (Texas Best, a partnership) should change, the guaranty should continue under the new status. The change in status here was the change of the debtor partnership to the debtor corporation. Consequently, liability under the guaranty continued and extended to Texas Best Redi–Mix, Inc. Furthermore, the guaranty itself expressly contemplated in paragraph six that the debtor (Texas Best) may be "hereafter incorporated," and if so, the guaranty would continue and the guarantor would remain personally liable for the debt of the corporation, the successor to the partnership. The Supreme Court of Texas stated in *Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726, 732 (Tex.1981):

> If a written contract is so worded that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous. It follows that parol evidence is not admissible to render a contract ambiguous, *which on its face, is capable of being given a definite certain legal meaning.* This rule obtains even to the extent of prohibiting proof of circumstances surrounding the transaction when the instrument involved, by its terms, plainly and clearly discloses the intention of the parties, or is so worded that it is not fairly susceptible of more than one legal meaning or construction.

(Emphasis added.) The guaranty is unambiguous. The fourth point of error is overruled.

Jessie M. Peters contends in his first point of error that the trial court erred in disregarding the jury's answer to question number three, "as there was sufficient evidence of probative force to support the jury's verdict as to Peters' affirmative defense of mutual mistake." He further contends in his second point of error that "the trial court erred in excluding evidence with respect to Peter's affirmative defense of fraud in the inducement."

Gifford–Hill, on the other hand, asserts that the trial court correctly disregarded the jury's answer to question number three and properly granted judgment to it notwithstanding such answer, and further asserts that the evidence relating to the claimed mutual mistake should have been excluded because of (1) the parol evidence rule, (2) the statute of frauds, and (3) the failure of Jessie M. Peters to plead mutual mistake.

■ The question of mutual mistake in this case involves the identity of the guarantor which the parties intended to be bound by the guaranty. Jessie M. Peters claims that such party was Peters & Son, a corporation not related to Texas Best or Texas Best Redi–Mix, Inc. Gifford–Hill claims that such party was Jessie M. Peters, individually.

To establish the defense of mutual mistake in a written instrument, the party asserting such defense must plead and prove two elements: (1) the original (true) agreement, and (2) a mutual mistake made after the original agreement in reducing the original agreement to writing. *Cherokee Water Co. v. Forderhause*, 741 S.W.2d 377, 379 (Tex.1987). The party asserting the defense of mutual mistake must "prove what the true agreement was, but his case is not made by proof that there was an agreement which is at variance with the writing. He must go further and establish the fact that the terms or provisions of the writing which differ from the true agreement made were placed in the instrument by mutual mistake." *Sun Oil Co. v. Ben-*

*nett,* 125 Tex. 540, 547, 84 S.W.2d 447, 451 (1935). Although the evidence might establish the element of the existence of a prior agreement, it does not establish the vital element that the terms or provisions of the writing vary from the true agreement due to a mutual mistake of the parties. *Estes v. Republic National Bank of Dallas,* 462 S.W.2d 273, 275–76 (Tex.1970).

Shirley Melvin, the sales representative for Gifford–Hill, testified that she discussed the terms and conditions of the guaranty with Jessie M. Peters prior to his signing it, and told him that the guaranty was a personal guaranty. Her testimony was disputed by Jessie M. Peters. He testified that she told him that Peters & Son "was the party that was going to be responsible as the guarantor under that document." He further testified that he signed the written guaranty, but *did not read it.*

Assuming, without deciding, that Jessie M. Peters proved the first element by adducing proof of the parties' true oral agreement, he failed to prove the second, that of proving that the challenged terms in the writing were placed there by mistake. Jessie M. Peters did not adduce proof on the second element, because according to his own testimony he did not read the guaranty document before he signed in his own name. The guaranty on its face shows that Jessie M. Peters personally signed it. While a party's failure to read an instrument is not always a bar to the defense of mutual mistake, the general rule is that in the absence of fraud, a party's failure to read an instrument before signing it is not a ground for avoiding it. *Estes,* 462 S.W.2d at 276. Furthermore, there is no evidence that Jessie M. Peters thought he was signing the guaranty in his capacity as an officer of Peters & Son.

■ As already noted, the trial court found that there "was no fraud, trick, artifice, or device in the execution of the guaranty agreement." Jessie M. Peters argues that this case is an exception to the parol evidence rule, and the trial court erred in excluding the following testimony from the jury: (1) the statements by Jessie M. Pe-

ters that Shirley Melvin represented to him prior to his signing the guaranty that the guaranty was valid only as long as Texas Best was hauling the materials to the Peters & Son plant, and (2) the statement by Tony Peters that Shirley Melvin told him, prior to the execution of the guaranty, that the guaranty would "be good" only for the time that Texas Best was hauling materials to Peters & Son and until Texas Best opened its own mixing plant.

It is settled law that the parol evidence rule is a rule of substantive law, and testimony admitted in violation of that rule cannot be considered. *Incorporated Carriers, Ltd. v. Crocker,* 639 S.W.2d 338, 341 (Tex.App.—Texarkana 1982, no writ); *Piper Stiles & Ladd v. Fidelity & Deposit Co. of Maryland,* 435 S.W.2d 934, 940 (Tex. Civ.App.—Houston [1st Dist.] 1968, writ ref'd n.r.e.); *Patton v. Crews,* 264 S.W.2d 467, 470 (Tex.Civ.App.—Fort Worth 1954, writ ref'd n.r.e.). In upholding the parol evidence rule, the Texas Supreme Court in *Town North National Bank v. Broaddus,* 569 S.W.2d 489, 492 (Tex.1978), correctly assessed the danger of casually admitting oral testimony to vary the terms of a written agreement:

> The promise here complained of as being *intended* not to be performed was a collateral one in parol at variance with the written contract entered into, and one proof of which the law does not admit. If fraud could be predicated upon such promise and *intention, then any collateral parol agreement might be asserted to contradict, vary, or even abrogate any written contract, under the guise of fraudulent intent* not to perform such collateral parol agreement. *The practical effect would be to destroy the parol evidence rule all together.*

(Emphasis added.) The same danger is present when parol evidence is admitted under the guise of mutual mistake.

This Court, in *Tripp Village Joint Venture v. MBank Lincoln Centre,* 774 S.W.2d 746, 749 (Tex.App.—Dallas 1989, writ denied), said:

> In the absence of fraud, mistake, or accident, extrinsic evidence is inadmissible to

vary, supplement, or contradict the terms of a valid written instrument that on its face is complete and unambiguous. *Crozier v. Horne Children Maintenance and Educ. Trust*, 597 S.W.2d 418, 422 (Tex.Civ.App.—San Antonio 1980, writ ref'd n.r.e.). Before extrinsic evidence is admissible, the proponent must make a showing of some type of trickery, artifice, or device employed by the payee. *Town North Nat'l Bank v. Broaddus*, 569 S.W.2d 489, 494 (Tex.1978); *Simpson v. MBank Dallas, N.A.*, 724 S.W.2d 102, 108 (Tex.App.—Dallas 1987, writ ref'd n.r.e.). When applicable, the fraud exception to the parol evidence rule goes only to the documents that evidenced the parties' agreement. *Texas State Bank v. Sharp*, 506 S.W.2d 761, 763 (Tex.Civ.App.—Austin 1974, writ ref'd n.r.e.).

The case of *Park Creek Associates, Ltd. v. Walker*, 754 S.W.2d 426 (Tex.App.—Dallas 1988, no writ), involved a lessor's action against lessees for breach of a lease agreement and against the guarantor of that lease agreement. On facts virtually identical to this case, that guarantor signed the agreement with the word "guarantor" following his signature. This Court stated that the guarantor's signature:

> [F]ollowed by the designation "Guarantor" unambiguously *showed an intent* to answer for [the principal's] performance of the lease. Furthermore, *because the writing is unambiguous, the court may not consider parol evidence of its meaning*, such as [the guarantor's] testimony that he *intended* only to guarantee [the principal's] status as partners [in another entity].

*Park Creek*, 754 S.W.2d at 428–29 (emphasis added). As in *Park Creek*, nothing in the contract shows or gives the impression that Jessie M. Peters was acting as agent for Peters & Son; rather, the contract negates any such impression.

The evidence offered by Jessie M. Peters at trial does not constitute evidence of probative force of any mutual mistake because, as the trial court found, it is parol evidence offered to vary the express written terms of an unambiguous contract. If the parol evidence rule excludes parol evidence (1) that the lender told the guarantor he would not be personally liable on the lease, *Friday v. Grant Plaza Huntsville Associates*, 713 S.W.2d 755, 756 (Tex.App. —Houston [1st Dist.] 1986, no writ); (2) that the lender told the maker that he would not be liable on the note, *Broaddus*, 569 S.W.2d at 491; (3) that the guaranty was merely a formality that would not result in liability to the guarantor, *Simpson v. MBank Dallas, N.A.*, 724 S.W.2d 102, 107 (Tex.App.—Dallas 1987, no writ); and (4) that the guaranty would only cover goods delivered to Peters & Son, then there is no logical reason why parol evidence that Jessie M. Peters and Shirley Melvin intended the guarantor to be Peters & Son should not have been excluded.

Additionally, Jessie M. Peters and his witnesses were not competent, as a matter of law, to testify regarding Shirley Melvin's intent. Their testimony constitutes no evidence. *Varon v. Richardson Professional Properties, Inc.*, 583 S.W.2d 917, 919 (Tex.Civ.App.—Dallas 1979, no writ). "Testimony concerning the intent of another is at best opinion and is not admissible in evidence." *Combs v. Fantastic Homes, Inc.*, 584 S.W.2d 340, 344 (Tex.Civ.App.— Dallas), *writ ref'd n.r.e. per curiam*, 596 S.W.2d 502 (Tex.1979).

Assuming, *arguendo*, that Jessie M. Peters properly alleged the defense of mutual mistake, he failed to present any evidence that proved that such a mistake was made. The parol evidence rule applies to this case and the trial correctly excluded the introduction into evidence of all parol testimony which was in variance with the terms and provisions of the written guaranty. The trial court properly disregarded the jury's answer to question number three and rendered judgment for Gifford–Hill notwithstanding such answer. The first point of error is overruled.

■ As noted, Jessie M. Peters, in his second point of error, challenges the trial court's exclusion of evidence allegedly relating to his affirmative defense of fraud in the inducement. He has not brought for-

ward any point of error challenging the trial court's refusal to submit such a defense to the jury, nor does the record show an implicit finding against such defense. In order for parol evidence of fraud in the inducement to be admissible, there must be a showing of some type of trickery, artifice, or device. *Broaddus,* 569 S.W.2d at 494; *Simpson,* 724 S.W.2d at 108. Jessie M. Peters argues that there is sufficient evidence of trickery on the part of Shirley Melvin, Gifford–Hill's representative, so as to allow the introduction of evidence on the affirmative defense of fraud in the inducement. We do not agree. The general assertions by Jessie M. Peters and his witnesses that it was the *intent* of Shirley Melvin to deliberately misrepresent the terms of the guaranty that was later reduced to writing are merely conclusions or opinions which are not admissible and do not raise fact questions. *See Clark v. Dedina,* 658 S.W.2d 293, 296 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd). Jessie M. Peters failed to produce any evidence of fraud which induced him to sign the guaranty. Again, a party is charged with the obligation of reading what he signs. *Lawler v. Federal Deposit Ins. Corp.,* 538 S.W.2d 245, 248 (Tex.Civ.App.—Beaumont 1976, writ ref'd n.r.e.). The mere assertion by a party of his subjective intention to sign a document in a capacity other than the capacity in which he actually signed is insufficient to raise the fact issue of fraud in the inducement. The second point of error is overruled.

Jessie M. Peters claims in his third point of error that the trial court erred in sustaining the jury's answer to question number four "for the reason that there was no evidence to support such answer." He argues that there is no such evidence "for the reasons that the guaranty clearly states that the 'Debtor' whose debt is being guaranteed is Texas Best Redi–Mix, a partnership which existed at the time the guaranty was signed, but which ceased to exist in June 2, 1983," and that on that date, "a new entity, Texas Best Redi–Mix, Inc., was formed, and the balance owed by Texas Best Redi–Mix to Gifford–Hill was approxi-

mately $2,000 and said balance was subsequently paid in full."

The guaranty, when paragraphs two and six, heretofore discussed, are considered, makes it clear that if the Texas Best partnership was later incorporated, as was the case, that the guarantor would remain personally liable for the debt of the corporate successor (Texas Best Redi–Mix, Inc.). The provisions of paragraphs two and six were sufficient for the jury to find that Jessie M. Peters was personally liable for the debt of Texas Best Redi–Mix, Inc. to Gifford–Hill, subsequent to the change of status of the partnership, Texas Best Redi–Mix. The third point of error is overruled.

The judgment of the trial court is AFFIRMED.