In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00023-CV


______________________________




COSMA DENNIS AND DERRICK DENNIS, Appellants



V.



SERGIO L. VASQUEZ, Appellee




 


On Appeal from the County Court at Law No. 3


Fort Bend County, Texas


Trial Court No. 17,205




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Ross



O P I N I O N



 Sergio Vasquez brought suit against Cosma Dennis for default on a promissory note
and against Derrick Dennis, Cosma's brother, as the personal guarantor of the note, for
money due under the note. After a bench trial, the court rendered judgment in favor of
Vasquez for $21,524.79 and attorney's fees. Cosma and Derrick appeal the judgment,
alleging seven points of error. 

 Cosma and Derrick first contend the court abused its discretion by refusing to allow
them to file supplemental answers. Second, Cosma contends the trial court abused its
discretion in refusing him the benefit of representation by counsel. In their third point of
error, the Dennises contend the trial court erred in denying their motion for new trial. (1) 
Derrick contends in the fourth point of error the trial court erred in denying his motion for
directed verdict. Fifth, both Cosma and Derrick contend the trial court erred in granting
judgment in favor of Vasquez. In the sixth point of error, the Dennises contend Claudio
Fernandez was an undisclosed witness and the trial court abused its discretion in
permitting him to testify. In the final point of error, Derrick contends the trial court abused
its discretion in ruling on Derrick's motion to abate without notice to him and without notice
of its ruling on the matter. 

 Vasquez seeks damages for frivolous appeal under Tex. R. App. P. 45. 

 In 1993, Vasquez and Cosma entered into a lease agreement, which Derrick
cosigned. The lease expired in 1995, and Cosma continued to occupy the premises on
a month-to-month basis. In 1997, Cosma fell behind in lease payments and Vasquez filed
an eviction proceeding. Vasquez, through his agent, Fernandez, entered into an
agreement with Cosma to dismiss the eviction proceeding and reduce the amount due to
$12,000.00 in exchange for Cosma's vacating the premises later that month and agreeing
to pay the reduced rental balance in installments of $400.00 for thirty months. The
promissory note provided that, in the event of default, the full delinquent rent of $19,460.00
would be due, plus reasonable attorney's fees. Derrick signed the promissory note as a
personal guarantor. 

 Cosma defaulted on the promissory note, making only three payments. Vasquez
gave Cosma credit for these three payments. This suit was filed after Vasquez demanded
payment on the note and Cosma refused to pay. Suit was filed on December 18, 1998. 
Cosma, acting pro se through trial, filed a general denial in March 1999. Derrick filed a
motion to abate and a motion for summary judgment. The trial court denied the motion to
abate and never ruled on the motion for summary judgment. On September 22, 2000, four
days before trial, Derrick, through his attorney, and Cosma, pro se, filed written requests
for leave of court to file supplemental answers. Although the court never expressly ruled
on these requests, both Derrick and Cosma filed such answers on that date. The record
shows Derrick's "supplemental" answer was his first answer to Vasquez' lawsuit. On the
day of trial, Derrick orally sought leave of court to file a second supplemental answer. 
Again, although the court never expressly ruled on this oral request, the record reflects
Derrick filed a second supplemental answer on September 28, 2000, the date the court
rendered its judgment. 

 The judgment rendered was in favor of Vasquez for $21,524.79, plus attorney's fees
through trial of $3,177.00, plus $2,500.00 in case of appeal to the court of appeals, and
$2,500.00 in case of appeal to the Texas Supreme Court.

 In their first point of error, the Dennises contend the trial court erred by refusing to
allow them to file supplemental answers. Both Derrick and Cosma sought to file
supplemental answers within seven days of trial. On the day of trial, September 26, 2000,
after hearing Derrick's oral request for leave to file a second supplemental answer and
Vasquez' objection to such answer, the court said, "Well, okay. Let's go ahead. Prove
your case."

 Parties may amend their pleadings, but if they wish to amend within seven days of
trial or thereafter, they must request and obtain leave of court. Tex. R. Civ. P. 63. The trial
court made no explicit ruling as to the supplemental answers. We liberally construe
Rule 63. Lee v. Key West Towers, Inc., 783 S.W.2d 586, 588 (Tex. 1989); Hoelscher v.
GFH Fin. Servs., Inc., 814 S.W.2d 842, 844 (Tex. App.-Dallas 1991, no writ). We
presume the court granted leave to file unless the record shows the amended petition was
not considered by the court. Lee, 783 S.W.2d at 588. The trial court did not directly deny
the filing of the supplemental answers and implicitly granted leave by allowing the Dennises
to present evidence that the promissory note was not valid. The trial court granted the
Dennises the relief they sought. 

 In the second point of error, Cosma contends the trial court abused its discretion by
refusing to allow him representation of counsel. Cosma complains that, by denying his
motion to be represented by counsel, the trial court in effect denied him the opportunity and
ability to raise his affirmative defenses. However, Cosma fails to direct this Court to any
place in the record where he requested and was denied an opportunity to obtain counsel. 
See Tex. R. App. P. 38.1(h). Further, we were unable to locate any such request by our
own thorough review of the record. 

 The record does reflect an exchange between the court and Derrick's attorney, Kurt
Clarke, concerning whether Clarke was also representing Cosma. Clarke stated to the
court he was there to represent Derrick and was only on record as representing Derrick. 
He further stated, "[I]n the interest of justice, if I have to assist Cosma Dennis, I will," to
which the court responded, "[Y]ou can't just up and represent Cosma Dennis, unless he
authorizes you." We were unable to locate any place in the record where Cosma
authorized Clarke to represent him at trial.

 Cosma also fails to cite authority supporting his contention under this alleged point
of error. Thus, it is unclear if Cosma is contending he was entitled to appointed counsel
or just that the trial court failed to provide him the opportunity to obtain counsel. 

 A court may appoint counsel for an indigent person in any case. Tex. Gov't Code
Ann. § 24.016 (Vernon 1988). However, except in limited circumstances not applicable
here, the indigent pro se has no right to an attorney and the decision to appoint one is
entrusted to the trial court's discretion. The test is whether the situation is an "exceptional
[case in which] public and private interests at stake are such that the administration of
justice may best be served by appointing a lawyer to represent an indigent civil litigant." 
Travelers Indem. Co. v. Mayfield, 923 S.W.2d 590, 594 (Tex. 1996). We are unable to find
in the record where Cosma demonstrated he was indigent or his case was exceptional. 

 Regardless of whether Cosma wanted appointed counsel or leave to obtain counsel,
he never made either of these requests known to the trial court. He represented himself
from the beginning. Until the day of trial, everything filed on his behalf, including his
supplemental answer, was filed pro se. Cosma never requested counsel, never
announced he had counsel, and never sought leave to seek counsel. This point of error
is overruled.

 In their third point of error, the Dennises contend the trial court abused its discretion
by denying their motion for new trial. They advance five reasons why the trial court should
have granted this motion. They first contend the motion should have been granted
because the trial court permitted an undisclosed witness, Fernandez, to testify on behalf
of Vasquez. They contend this was over their objection and much to their surprise. 
However, the only objection to Fernandez' testimony came from Derrick's attorney. Cosma
made no objection to this testimony. By failing to timely object, Cosma waived this
complaint on appeal. Tex. R. App. P. 33.1. Dennis made a timely objection, preserving this
point of error for appeal. Id.

 Vasquez was under no duty to disclose his witnesses, and there was nothing
preventing Fernandez from testifying as a fact witness. There is nothing in the record
showing that either Derrick or Cosma conducted any discovery. There were no requests
for disclosure or interrogatories submitted to Vasquez, and there was no general order
entered by the court requiring disclosure. In the absence of an affirmative duty to disclose
a witness, a party has no such duty. 

 The Dennises' second reason why their motion for new trial should have been
granted repeats their first point of error. They again contend the court refused to permit
them to file supplemental answers. As discussed above, the court implicitly granted them
leave to file supplemental answers. 

 As his third basis for contending the court erred in denying the motion for new trial,
Cosma once again asserts the court's alleged refusal to allow him representation of
counsel. As stated above, Cosma did not request counsel and the trial court did not deny
him counsel.

 The Dennises' fourth reason supporting their contention the court abused its
discretion in denying their motion for new trial is that the court erred in finding for Vasquez
before the Dennises were afforded the opportunity to present their defenses. 

 At the close of Vasquez' case, Derrick moved for a directed verdict. After both sides
argued the motion, the court overruled it and erroneously proceeded to pronounce
judgment in favor of Vasquez. Derrick promptly pointed out to the court that he had not put
on any defense. The court indicated it thought Derrick had rested, and then stated: "Fine. 
From what I heard, I had ruled; but I withdraw that. Okay. You're open to testify. Go
ahead."

 Although the court mistakenly pronounced judgment in favor of Vasquez, Derrick
pointed out the court's error and the court then allowed Derrick and Cosma the opportunity
to present their defenses. There was no error.

 The court's denial of Derrick's motion for a directed verdict forms the basis of his
fifth reason why the court abused its discretion in denying the motion for new trial. Derrick
argued in his motion for directed verdict that the evidence was legally and factually
insufficient to support a judgment against him. 

 When, as here, the trial court has made no findings of fact and conclusions of law,
we presume it resolved all factual disputes in support of the judgment. Stauffacher v. Lone
Star Mud, Inc., 54 S.W.3d 810, 814 (Tex. App.-Texarkana 2001, no pet.); Cartlidge v.
Hernandez, 9 S.W.3d 341, 345 (Tex. App.-Houston [14th Dist.] 1999, no pet.) (citing
Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990)). When, as here, a reporter's
record is available on appeal, the parties may challenge these implied findings by factual
sufficiency and legal sufficiency points in the same way they may challenge jury findings
or a trial court's findings of fact. LeBlanc v. Kyle, 28 S.W.3d 99, 102 (Tex. App.-Texarkana
2000, pet. denied). When such evidence sufficiency points are raised, the standard of
review to be applied is the same as that to be applied in the review of jury findings.

 In reviewing legal sufficiency arguments, we must consider the evidence and draw
all inferences in the light most favorable to the verdict. See Southwestern Bell Mobile Sys.,
Inc. v. Franco, 971 S.W.2d 52, 54 (Tex. 1998). In reviewing factual sufficiency arguments,
we must consider and weigh all the evidence, and we set aside the verdict only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. 
See Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).

 The evidence is legally sufficient to support the judgment. Derrick contends the
evidence shows he did not know he was signing the promissory note as a guarantor, but
thought he was signing as a witness. In looking at the evidence most favorable to the
verdict, we note Cosma testified he "begged" Derrick to sign as a guarantor. We further
note Derrick testified he understood that, by signing the note, he was agreeing to
personally guarantee payment. Finally, the promissory note unambiguously shows Derrick
signed as a guarantor, not as a witness. These facts support the trial court's judgment. 

 Failure to read a document, without a showing of fraud, is generally not a defense. 
Estes v. Republic Nat'l Bank, 462 S.W.2d 273, 276 (Tex. 1970); Peters v. Gifford-Hill &
Co., 794 S.W.2d 856, 861 (Tex. App.-Dallas 1990, writ denied). Derrick signed the
promissory note, testified he can read and write English, and did not plead duress or fraud
as a defense. Derrick also admitted signing the promissory note and admitted he
understood that, by signing, he was agreeing to personally guarantee payment and the
money was to be paid to Vasquez. Vasquez presented evidence he faxed a full copy of
the promissory note to Cosma a week before he signed, and there is no evidence Vasquez
or his agent, Fernandez, denied Derrick the opportunity to read the promissory note or
misled Derrick regarding why he was signing. The evidence was legally sufficient to
support the judgment in favor of Vasquez.

 The evidence is also factually sufficient to support the judgment. In reviewing
factual sufficiency arguments, we consider and weigh all the evidence and set aside the
verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust. See Cain, 709 S.W.2d at 176. The evidence clearly shows Derrick
signed the promissory note and understood what he was signing. In a full review of the
record, we found nothing indicating the verdict is so contrary to the overwhelming weight
of the evidence as to be clearly wrong and unjust. The court did not abuse its discretion
in overruling the Dennises' motion for new trial.

 In the fourth point of error, Derrick contends the trial court erred in denying his
motion for directed verdict. In reviewing the denial of a motion for directed verdict for the
defendant, the question is whether the evidence adduced at the time the plaintiff rests,
viewed in the light most favorable to the plaintiff, raises an issue for the fact-finder. Vance
v. My Apartment Steak House, 677 S.W.2d 480, 483 (Tex. 1984); Fibreboard Corp. v.
Pool, 813 S.W.2d 658, 678 (Tex. App.-Texarkana 1991, writ denied). 

 Derrick contends the trial court erred in denying the motion for directed verdict
because there is evidence he did not read what he was signing and thought he was signing
as a witness. But, as noted above, the general rule is that, in the absence of fraud, a
party's failure to read an instrument before signing it is not a ground for avoiding it. Estes,
462 S.W.2d at 276; Peters, 794 S.W.2d at 861. Parties to an arm's-length transaction are
charged with a duty to read what they sign. Thigpen v. Locke, 363 S.W.2d 247, 251 (Tex.
1962); Indem. Ins. Co. v. W. L. Macatee & Sons, 129 Tex. 166, 101 S.W.2d 553, 556
(1937). Derrick contends he did not read the promissory note and thought he was signing
as a witness. Although he testified he did not have time to read the note, no evidence was
presented that Vasquez or Fernandez in any way prevented him from reading the
document or told him they needed him to sign as a witness. In fact, the language of the
note itself clearly showed Derrick was signing in the capacity of guarantor. The paragraph
above Derrick's signature is titled "Personal Guarantee" and then states, "I, DERRICK
DENNIS, do personally guarantee the payment of this note in a timely manner to the
Holder, and agree to be bound by the terms of this Note, . . . ." The words "Personal
Guarantor" (not "witness") are clearly printed below Derrick's signature. 

 Vasquez and Fernandez knew in what capacity Derrick was signing, and Cosma
testified he "begged" Derrick to sign the note as a guarantor. Derrick admitted signing the
promissory note and admitted he understood that, by signing, he was agreeing to
personally guarantee payment and the money was to be paid to Vasquez.

 Cosma testified he did not have time to read the document before signing. Again,
the general rule is that, in the absence of fraud, a party's failure to read an instrument
before signing is not a ground for avoiding it. Estes, 462 S.W.2d at 276; Peters, 794
S.W.2d at 861. Derrick points in the record to where Cosma testified he did not have the
entire document and did not have the opportunity to read it. This testimony occurred after
the trial court denied Derrick's motion for directed verdict. Therefore, we cannot consider
this testimony in determining if the trial court erred in denying the motion for directed
verdict. See Pool, 813 S.W.2d at 678. The evidence, viewed in a light most favorable to
Vasquez at the time the motion was made, clearly raises an issue for the fact-finder.

 In the fifth point of error, the Dennises contend the trial court erred in granting
judgment in favor of Vasquez because the evidence was legally and factually insufficient
to sustain Vasquez' burden of proof. Derrick also contends Vasquez' claim was barred by
res judicata.

 As discussed above, the evidence is legally and factually sufficient. Further, this
case was not barred by the doctrine of res judicata. Derrick raised the defense of
res judicata in his second supplemental answer by reliance on the eviction proceedings in
the justice of the peace court. The only evidence regarding these proceedings was by
testimony of witnesses; neither Derrick nor Cosma presented any evidence of a final
adjudication of those proceedings in justice court. Even if full adjudication on the merits
had occurred in an action to evict, Vasquez was not barred from bringing this action for
default on a promissory note. See Home Sav. Ass'n v. Ramirez, 600 S.W.2d 911, 913
(Tex. Civ. App.-Corpus Christi 1980, writ ref'd n.r.e.) (forcible detainer action does not
prohibit filing of related suit in district court); Dews v. Floyd, 413 S.W.2d 800, 805 (Tex. Civ.
App.-Tyler 1967, no writ) (forcible detainer proceeding not exclusive, but cumulative of any
other remedy a party may have; award for unpaid rent by justice court found void by county
court because it exceeded jurisdictional limits of justice court; but such judgment did not
preclude suit for other indebtedness under contract from being brought in district court). 
The claim on the promissory note is not subject to res judicata.

 In the sixth point of error, the Dennises contend the trial court erred or abused its
discretion by permitting Fernandez, an undisclosed witness, to testify on behalf of
Vasquez. As stated above, only Derrick preserved this complaint for appeal, and the trial
court did not err in admitting Fernandez' testimony because Vasquez was under no duty
to disclose his witnesses. 

 Derrick further complains Fernandez lacked authority to file the case or appear on
behalf of Vasquez. Contrary to Derrick's contention, Fernandez did not file the lawsuit. The
pleadings clearly show Vasquez filed the suit, not Fernandez. Further, Vasquez called
Fernandez as a fact witness who had relevant information pertinent to the case. This point
of error is overruled.

 In the final point of error, Derrick contends the trial court abused its discretion in
ruling on his motion to abate without notifying him of the hearing and without notifying him
of its ruling. Derrick failed to preserve this point for appeal because he did not object to
the lack of notification. Tex. R. App. P. 33.1. He did not object at the time he learned of
the ruling, on the day of trial, nor did he raise this in his motion for new trial. Derrick did not
file a motion for continuance seeking a rehearing on the motion, did not seek to make a
record showing he did not receive notice of the hearing, and did not reassert the motion
before trial. The order denying the motion to abate was signed February 11, 1999, and the
case did not go to trial until September 26, 2000, almost a year and a half later. A party
to a suit is charged by law with notice of all orders and judgments rendered therein. 
Weirich v. Weirich, 833 S.W.2d 942, 946 (Tex. 1992); Pentikis v. Texas Elec. Serv. Co.,
470 S.W.2d 387, 390-91 (Tex. Civ. App.-Fort Worth 1971, writ ref'd n.r.e.); Hartman v.
Byrd, 47 S.W.2d 659, 661 (Tex. Civ. App.-Texarkana 1932, no writ). All of the Dennises'
contentions are overruled.

 We have considered Vasquez' request for Rule 45 damages, and such request is
denied.


 We affirm the judgment.



 Donald R. Ross

 Justice


Date Submitted: March 7, 2002

Date Decided: March 8, 2002


Do Not Publish

1. Kurt Clarke, attorney for Derrick at trial, filed one motion for new trial for both
Derrick and Cosma. 


 35 S.W.3d at 639. In this light, courts must not
redraft wills to vary or add provisions "under the guise of construction of the language of
the will" to reach a presumed intent. Stahl, 610 S.W.2d at 151. 
          If the will is unambiguous, the court should not go beyond the specific terms to
ascertain the requisite intent. Lang, 35 S.W.3d at 639. If, on the other hand, the meaning
of the instrument is uncertain or "reasonably susceptible to more than one meaning," the
instrument is ambiguous and extrinsic evidence should be considered to ascertain the
testator's intent. See Davis v. Shanks, 898 S.W.2d 285, 286 (Tex. 1995); Eckels v. Davis,
111 S.W.3d 687, 694 (Tex. App.—Fort Worth 2003, pet. denied); Myrick v. Moody, 802
S.W.2d 735, 738 (Tex. App.—Houston [14th Dist.] 1990, writ denied). Evidence of the
testator's situation, the surrounding circumstances, and like indicia which enable the court
to place itself in the shoes of the testator at the time the document was executed may be
admissible. Lang, 35 S.W.3d at 639. This is so because it may facilitate the determination
of intent at that time. See id. 
Ademption
          "[A]demption describes the extinction of a specific bequest or devise because of the
disappearance of or disposition of the subject matter given from the estate of the testator
in his lifetime." Stahl, 610 S.W.2d at 148. Unless the testator specifically provides
otherwise in the will, the sale or removal of a specific bequest from the estate adeems the
devise or bequest. Id. at 150. A will speaks at the time of the testator's death, and only
the estate the testator then possessed passes under the terms of the will. Id. When a
specific devise of realty is adeemed because the testator sold it before his or her death,
absent a contrary intent expressed in the will, the beneficiaries of the realty under the will
are not entitled to the sale proceeds; instead, the proceeds pass under the residuary
clause. Id. at 150–52. The doctrine of ademption applies only to specific bequests and
devises. In re Estate of Brown, 922 S.W.2d 605, 607 (Tex. App.—Texarkana 1996, no
writ). 
            A bequest or devise can be specific, general, demonstrative, or residuary. Hurt v.
Smith, 744 S.W.2d 1, 4 (Tex. 1987). A devise or bequest is specific if it is described in the
will with such particularity that the property is distinguished from all of the testator's other
property, and the testator intended for the beneficiary to receive that particular item, rather
than cash or other property from his or her general estate. Id. "No special words are
required to make a bequest specific, though such words as 'my,' 'owned by me,' 'standing
in my name,' or 'in my possession' are indicative of the specific character of the legacy." 
Pinkston v. Pinkston, 81 S.W.2d 196, 198 (Tex. Civ. App.—Eastland 1935, no writ). A
legacy is a general bequest if it bequeaths a designated quantity or value of property or
money and the testator intended for it to be satisfied out of her or his general assets rather
than disposing of, or being charged upon, any specific fund or property. Id. 
          Such classification depends on the intent of the testator as shown by the entire will. 
Hurt, 744 S.W.2d at 4. When classifying bequests in a will, we must consider the testator's
intent by looking at the entire dispositive scheme, rather than reaching an arbitrary
determination based on ritualistic classification. Id. It is necessary to determine, for each
item bequeathed in the will, whether the testator intended the property to be disposed of
as a specific asset, or merely as a portion of her or his general estate. Id. 
          A review of Beverly's entire will reveals that her clear intent was to devise Shady
Glade to her sons as a specific asset. Shady Glade is described with great particularity in
the "Stipulation of Ownership" referenced in the will. Beverly also distinguished it from all
her other property in the disposition scheme. Considering the entire will, the only item of
her property that she specifically provided for was Shady Glade. She disposed of all her
other property through the residuary clause. She also devised "all my interest . . . in Shady
Glade," reflecting the specific character of the devise. See Pinkston, 81 S.W.2d at 198. 
           In addition, the will evidences Beverly's intent for her sons to receive that particular
item, rather than cash or other property from her general estate. In her will, Beverly
excluded her daughter, Bebe, from Shady Glade "due to the difficulties I have previously
experienced with her husband, Richard N. Cole, and because I am satisfied that she has
adequate means to ensure her future support and well-being." She specifically provided
that her intention was for her two sons to receive Shady Glade. Therefore, her devise of
that property was a specific one, subject to ademption.



          Libby contends, and the trial court agreed, Beverly specifically provided for the
proceeds from the sale of Shady Glade and, therefore, the devise should not be adeemed. 
The sale or removal of a specific bequest from the estate adeems the devise or bequest,
unless the testator specifically provides otherwise in the will. Stahl, 610 S.W.2d at 150. 
Libby contends the following italicized language in Beverly's will evidences a contrary intent
to ademption:
          I will, devise and bequeath all my interest in all that certain real and
personal property located near Caddo Lake in northeastern Harrison County,
and commonly known as Shady Glade (being the same property described
in that certain Stipulation of Ownership executed by Dallas Harris and myself
on October 21st, 1994, and recorded under Clerk's File # 10094-H in the
Offices of the County Clerk for Harrison County, Texas) together with all
additions thereto and substitutions therefor, . . . . 
 
(Emphasis added.) Libby contends the phrase "together with all additions thereto and
substitutions therefor" specifically provides for the proceeds from the sale of Shady Glade. 
Dallas contends this language is ambiguous and does not specifically provide for the
disposition of the proceeds from the sale of Shady Glade, and extrinsic evidence is thus
admissible to ascertain Beverly's intent. 
          This is not the type of phrase which has a settled legal meaning, akin to "real
property" or "community or separate property." See Lang, 35 S.W.3d at 640 ("real
property" has settled legal meaning which does not include real estate liens and
promissory notes); Stewart v. Selder, 473 S.W.2d 3, 11 (Tex. 1971) (Calvert, C.J.,
concurring) (terms such as separate and community property are so clear, plain, and
unambiguous they do not allow constructions other than those "ascribed to them in law"). 
It also cannot be said that the term "substitution," as used in this devise, carries a meaning
"settled by usage and sanctioned by judicial decisions." See Davis v. Shanks, 898 S.W.2d
285, 286 (Tex. 1995) (finding word "contents" had no settled legal meaning at time of
testator's death; therefore, extrinsic evidence was admissible to show testator's intent). We
have been unable to find where any court in the United States has addressed the meaning
of a testator's reference to the "substitution" of property in this context, and whether such
reference includes the proceeds from the sale of that property. 
          Courts have analyzed decedents' wills to determine if an intent contrary to
ademption was provided. These cases, however, do not provide a clear guide in this case. 
          In Opperman v. Anderson, 782 S.W.2d 8, 9–10 (Tex. App.—San Antonio 1989, writ
denied), the deceased's will bequeathed different stocks to certain beneficiaries, "together
with all dividends, rights and benefits declared thereon at the time of my death, and all
rights and benefits thereof." The deceased sold some of the stock before death, and the
San Antonio court found the bequest was specific and adeemed the stock sold before
death. Id. at 11. The appellees interpreted "rights and benefits" to include cash proceeds
from the sale of the shares. Id. The court disagreed, finding that "rights and benefits"
included only such things as voting rights and dividends, not the proceeds from the sale
of the shares. Id.
          In Bates v. Fuller, 663 S.W.2d 512, 514 (Tex. App.—Tyler 1983, no writ), the
deceased provided that real estate owned at her death 
shall be sold by my Executor to pay all of my legally enforceable debts,
funeral expenses, all costs of my last illness, costs and expenses of the
administration of my estate, and Federal Estate Taxes, if any. After such
debts, expenses and taxes have been paid, the balance of the proceeds
remaining from the sale of my real estate, shall be divided equally among my
three children . . . .
  
The court found that the testator's overall purpose and intent was clearly to make a
bequest, under the above-quoted provisions, of the proceeds from the sale of "my real
estate" to her three daughters, after payment of certain debts and expenses. Id. at 515. 
The court went on to hold that the devise was not adeemed by such sale since the
proceeds were an identifiable part of the estate at the date of death. Id. at 516. Therefore,
in Bates, the intent to provide for the proceeds from the sale of the property was
specifically provided for in the devise. See also In re Estate of Dublin, 101 A.2d 731 (Pa.
1954) (finding where devise of specific real estate described property as "under agreement
of sale" was not adeemed by predeath sale of real estate); In re Estate of Frost, 47 A.2d
219 (Pa. 1946) (finding testamentary gift of "proceeds" of General Motors stock did not
adeem specific bequest from predeath sale of stock). This is not the situation in this case. 
          Words of common use are given their plain and ordinary meaning unless it appears
from the context they were used in a different sense. Stahl, 610 S.W.2d at 152; Vinson
v. Brown, 80 S.W.3d 221, 231 (Tex. App.—Austin 2002, no pet.). We must, therefore,
determine whether the plain, ordinary meaning of "together with all additions thereto and
substitutions therefor" showed an intention by Beverly to provide for the proceeds from the
sale of Shady Glade under the specific devise. 
          "Substitution" is defined as "the act, process, or result of substituting one thing for
another." Merriam-Webster's Collegiate Dictionary 1174 (10th ed. 1993). The word
"substitution" has also been defined to mean "to put in place of another thing"; "serves in
lieu of another"; "having some of its parts replaced." In re Estate of Cooke, 264 N.Y.S. 336
(N.Y. Sur. Ct. 1933). The word is a synonym for "change of one thing for another." Id. 
"Substituted," in its ordinary sense and well-known meaning, is something placed in a
position previously occupied by another thing. Id. "Therefor" is defined to mean "for or in
return for that." Merriam-Webster's Collegiate Dictionary 1223.


 
          We find that the devise is reasonably susceptible to more than one meaning and
that the instrument is, therefore, ambiguous. The phrase "together with all additions
thereto and substitutions therefor" does not provide a clear indication of whether Beverly
intended to include the proceeds from the possible future sale of Shady Glade in the
devise to her two sons. In addition, the stated intent included in the devise does not
indicate whether she intended to exclude Richard from only the business operations and
management of the business, or whether she intended to also exclude him from all
possible future benefits of the business, including proceeds from its sale.  
          On one hand, the provision providing for the "substitution" of Shady Glade could be
interpreted to provide for any substitute for Shady Glade, the entity, including the complete
substitution of the business for money or a promissory note. The devise for all the real and
personal property of Shady Glade, "together with all additions thereto and substitutions
therefor" could include anything added to Shady Glade or put in the place of or exchanged
for Shady Glade, the business. This language appears broad enough to encompass any
substitute for Shady Glade, including proceeds from its sale.  
          This language, however, could also be construed to include only the additions or
substitutions to the real or personal property that comprised Shady Glade, but not the
proceeds from the sale of that property. The description of Shady Glade in the "Stipulation
of Ownership" provides a detailed description of the real property, along with a list of all the
personal property, down to the appliances. Dallas contends the devise was of this
specifically articulated property, and only additions to and substitutions for that specific
property were intended, not the proceeds from its sale. Dallas also points out that, since
Beverly meticulously described in the "Stipulation of Ownership" all the property, both real
and personal, she was devising to her two sons, she would have also provided for the
proceeds from its sale with the same specificity in her will, had it been her intent to include
such proceeds in her devise.
          In addition, the paragraph setting out Beverly's intent in devising Shady Glade to her
sons does not demonstrate a clear indication of whether Beverly intended to provide for
the proceeds from the sale of Shady Glade. The devise includes the following paragraph,
evidencing Beverly's intent in making the devise: 
          I specifically exclude my daughter, Bebe Ann Hines Cole from this
bequest due to the difficulties I have previously experienced with her
husband, Richard N. Cole, and because I am satisfied that she has adequate
means to ensure her future support and well-being. Under no circumstances
do I wish Richard N. Cole to have any interest in or control over Shady Glade
at any time, now or in the future. 
Beverly's stated intent in devising Shady Glade was to ensure that Richard had no interest
in or control over Shady Glade, "now or in the future," under any circumstances. Again,
this provision is reasonably susceptible to more than one meaning. This paragraph could
be construed to mean Beverly intended to exclude her daughter from the devise to ensure
that her husband, Richard, could receive no possible benefits from the business at all,
including any proceeds from its sale. It is evident, however, from Beverly's devise of one
third of her residuary estate to Bebe, that she did not intend to exclude Richard from any
possible participation in the benefits of her estate. On the other hand, the language under
consideration could be construed to mean she intended to exclude her daughter and
Richard only from the management or operations of Shady Glade as a business. 
          In a similar circumstance, the court in Sammons, 940 S.W.2d at 280–81,
determined that a term in a will was capable of more than one meaning and extrinsic
evidence was admissible to determine the testator's intent. The appellant complained the
term "savings account and/or savings certificate" in a devise was not ambiguous. Id. at
280. The court first looked to the dictionary definition of the words used. Id. at 281. The
court concluded that, in light of the lack of caselaw and the broad dictionary definition, the
term was ambiguous in the context of the will and extrinsic evidence was admissible. Id.
          Likewise, in this case, the dictionary definition of "substitutions" is broad and there
is a complete absence of caselaw on whether proceeds is a substitute for a specific devise
of real and personal property. The term "substitution" in the context of Beverly's will
reasonably conveyed more than one meaning. 
          An ambiguity can either be classified as a latent or patent ambiguity. A patent
ambiguity is one apparent on the face of the will. Brown, 922 S.W.2d at 608. It arises on
the reading of the will from the words themselves. Id. A latent ambiguity exists when the
will appears to convey a sensible meaning on its face, but it cannot be carried out without
further clarification. Id. at 608–09. In the past, extrinsic evidence was admissible only to
explain a latent ambiguity, but not to explain a patent ambiguity. Id. at 609. The modern
rule, however, admits extrinsic evidence to show the testator's intent, whether the
ambiguity is latent or patent. Id.
          We conclude the ambiguity in this case is patent. The devise of Shady Glade sets
up a conflict from the words themselves. It is not clear from the devise whether Beverly
intended to provide for the proceeds of Shady Glade. We conclude the will contains a
patent ambiguity, and we will look to extrinsic evidence to determine Beverly's intent.


 
Summary Judgment Evidence
          When both sides move for summary judgment and the trial court grants one motion
and denies the other, the reviewing court should review both parties' summary judgment
evidence and determine all questions presented. Bright, 89 S.W.3d at 605. The reviewing
court should render the judgment the trial court should have rendered. Id.
           The extrinsic evidence in this case conclusively establishes Beverly's intent. The
extrinsic evidence consists of two affidavits attached to Dallas' amended motion for
summary judgment. The first affidavit is his and states Beverly executed her will and the
"Stipulation of Ownership" at the time of the settlement of the lawsuit with Richard. Dallas
states that he was present during the discussions regarding the preparation of Beverly's
will and that her intention was
to make sure that Richard Cole had no voice in the management of Shady
Glade Camp, . . . . Since I was putting my money into the business and
becoming a partner with her, my wife and I both wanted to make sure there
would be no management problems with Mr. Cole in the event that my wife
died before me. . . . I understood that my wife did not intend to make an [sic]
permanent unequal division of her entire estate, but she wanted specifically
to exclude Richard Cole from any voice in the management of Shady Glade
Camp; . . . . 
 
          J. Rodney Gilstrap, Beverly's attorney involved in the litigation with Richard Cole and
who drafted the "Stipulation of Ownership" and Beverly's will, also submitted an affidavit. 
In that affidavit, he also outlines Beverly's intentions in devising Shady Glade.
Because of the business management problems with Mr. Cole, Mrs. Harris
was adamant that Mr. Cole never have any involvement with the business. 
 
          There was no discussion ever with Mr. or Mrs. Harris about the
possibility of selling Shady Glade Camp. . . . 
 
          In describing the Shady Glade Camp business, I was very specific in
including all the real estate owned by the business on or near Caddo Lake,
and went on to specifically include all the personal property owned by the
business. I incorporated into the will by reference the Stipulation of
Ownership executed at the same time by Mr. and Mrs. Harris, which lists all
the real and personal property owned by the business. The Stipulation of
Ownership lists the canoe, the boats, the equipment, appliances, furnishing,
furniture, supplies, linens, and other items owned by the business. In
preparing Mrs. Harris' will, I stipulated that the bequest of Shady Glade
Camp included not only those items, but "all additions thereto and
substitutions therefor." It was my intent and understanding that this phrase
would refer to any of the items of personal property which were acquired by
the business after the making of the will, whether they were new items or
items purchased to replace a lost or worn-out article. It was not my intent to
suggest that the entire business might be sold and a note taken for the sale
would be considered a "substitute" for the business. Although I never asked
that specific question of Mrs. Harris, I am confident from our many, many
discussions that she did not intend such a meaning for that phrase. I am
sure as one may be, that Mrs. Harris intended and understood that the
phrase, "together with additions thereto and substitutions therefor" referred
to the acquisition or replacement of personal property then owned by the
camp, as itemized on page four of the "Stipulation of Ownership" signed on
the same date as the will. We carefully reviewed her will on more than one
occasion before she executed it, and I was, and am, confident that we
agreed on its meaning.  
          From these affidavits, it is apparent that, at the time of the execution of her will,
Beverly did not contemplate the sale of Shady Glade, and the "substitution" for Shady
Glade was not intended to encompass proceeds from its possible future sale. It is
apparent that Beverly's intent in devising Shady Glade to her two sons was to exclude
Richard only from control over the management and operations of Shady Glade, the
business. It was not her intent to exclude Richard and her daughter, Bebe, from all
possible benefits of the property, including any future proceeds from its sale. 
          We reverse the trial court's determinations that the will was not ambiguous and 
provided an intent contrary to ademption. The devise was ambiguous as to the proceeds
from the sale of Shady Glade, and the extrinsic evidence establishes that a sale was not
contemplated by Beverly when she executed the will. Because the extrinsic evidence
establishes that an intention contrary to ademption was not expressed, we find that the
devise of Shady Glade was adeemed at her death and that the proceeds from its sale
owing at that time passed pursuant to the residuary clause of the will.
           We, therefore, reverse the trial court's order granting summary judgment for Libby,
and for Bebe, as trustee for Cy Rickey, and render summary judgment for Dallas, as
independent executor of Beverly's estate. 



                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      May 12, 2004
Date Decided:         June 8, 2004